**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**
www.okwd.uscourts.gov

**CARMELITA REEDER SHINN**
CLERK

**WILLIAM N. PIGOTT, JR.**
CHIEF DEPUTY

200 N.W. 4th Street, Room 1210
Oklahoma City, Oklahoma 73102
(405) 609-5000    Fax (405) 609-5099

10/28/2021

☐ Pro Se    ☑ Retained    ☐ Court Appointed    ☐ USA
(IFP Granted)

Case No: 5:21-cv-00539-HE                    Date Filed: 10/27/2021

Style of Case: McLaughlin v. Board of Regents of the University of Oklahoma et al
Appellant: Lindsey Gray-Walton and Kyle Walton

☑ Notice of Appeal                    ☐ Amended Notice of Appeal
☐ Interlocutory Appeal                ☐ Cross Appeal
                                       ☐ Tenth Cir. Case No.

Pro se Appellant:
☐ Motion IFP Forms Mailed/Given    ☐ Motion IFP Filed    ☐ Appeal Fee Paid

Retained Counsel:
☑ Appeal Fee Paid    ☐ Appeal Fee Not Paid

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals.  Please refer to the forms and procedures concerning the requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record found on the Tenth Circuit's website, www.ca10.uscourts.gov.

Payment for this case or motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 working days after the notice of appeal was filed in the Circuit Court.  This form must contain the signature of the court reporter if transcripts are being ordered.

If you have questions, please contact this office.

Sincerely,

CARMELITA REEDER SHINN, COURT CLERK

by: _s/ J. Schoonover_____
Case Administrator

cc:    Clerk of the Court, Tenth Circuit Court of Appeals

APPEAL,PURCELL,_SAB
Email All Attys
Email All Attys and Secondary Emails

# U.S. District Court
# Western District of Oklahoma[LIVE] (Oklahoma City)
# CIVIL DOCKET FOR CASE #: <u>5:21−cv−00539−HE</u>

| | |
|---|---|
| McLaughlin v. Board of Regents of the University of Oklahoma et al | Date Filed: 05/21/2021 |
| Assigned to: Honorable Joe Heaton | Jury Demand: Plaintiff |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Kylee McLaughlin**    represented by    **Stanley M Ward**
Ward & Glass LLP − STANLEY WARD
8001 E Etowah Road
Noble, OK 73068
405−659−4084
Email: rhonda@wardglasslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexey V Tarasov**
Tarasov Law
5211 Reading Road
Rosenberg, TX 77471
832−623−6250
Email: alexey@tarasovlaw.com
*ATTORNEY TO BE NOTICED*

**Richard C Labarthe**
Richard C Labarthe PC
820 NE 63rd St
Oklahoma City, OK 73105
405−843−5616
Fax: 405−843−9685
Email: richard@labarthelaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Board of Regents of the University of Oklahoma**
*a constitutional state agency*    represented by    **Austin R Vance**
Whitten Burrage
512 N Broadway Ave
Suite 300
Oklahoma City, OK 73102
405−516−7800
Fax: 405−516−7859

Email: avance@whittenburragelaw.com
*ATTORNEY TO BE NOTICED*

**Heidi J Long**
Edinger Leonard & Blakley
6301 N. Western Ave.
Ste 250
Oklahoma City, OK 73118–1047
405–803–8343
Fax: 405–605–8381
Email: hlong@elbattorneys.com
*TERMINATED: 09/02/2021*

**Jordan R Dennis**
Whitten Burrage
512 N Broadway Ave
Suite 300
Oklahoma City, OK 73102
405–516–7800
Fax: 405–516–7859
Email: jdennis@whittenburragelaw.com
*ATTORNEY TO BE NOTICED*

**Lexie P Norwood**
Attorney General's Ofc–NE
21STREET–OKC
313 NE 21st St
Oklahoma City, OK 73105
405–521–3921
Fax: 405–521–4518
Email: lexie.norwood@ou.edu
*TERMINATED: 07/21/2021*

**Michael Burrage**
Whitten Burrage
512 N Broadway Ave
Suite 300
Oklahoma City, OK 73102
405–516–7800
Fax: 405–516–7859
Email: mburrage@whittenburragelaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lindsey Gray–Walton**              represented by    **Austin R Vance**
*in her official capacity*                            (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jordan R Dennis**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

Michael Burrage
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lindsey Gray−Walton**                    represented by    **Austin R Vance**
*in her individual capacity*                                 (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jordan R Dennis**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Michael Burrage**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Kyle Walton**                            represented by    **Austin R Vance**
*in his official capacity*                                   (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jordan R Dennis**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Michael Burrage**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Kyle Walton**                            represented by    **Austin R Vance**
*in his individual capacity*                                 (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jordan R Dennis**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Michael Burrage**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/21/2021 | 1 | | COMPLAINT against Board of Regents of the University of Oklahoma, Lindsey Gray−Walton(in her official capacity), Lindsey Gray−Walton(in her individual capacity), Kyle Walton(in his official capacity), Kyle Walton(in his individual capacity) filed by Kylee McLaughlin. (Attachments: # 1 Civil Cover Sheet)(jjs) (Entered: 05/24/2021) |

| 05/24/2021 | 2 | | Summons Issued Electronically as to Board of Regents of the University of Oklahoma, Lindsey Gray–Walton(in her official capacity), Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his official capacity), Kyle Walton(in his individual capacity). (jjs) (Entered: 05/24/2021) |
| --- | --- | --- | --- |
| 05/24/2021 | 3 | | ENTER ORDER counsel for plaintiff is directed to file an entry of appearance conforming to LCvR83.4 not later than 05/26/2021. Signed by Honorable Joe Heaton on 05/24/2021. (lam) (Entered: 05/24/2021) |
| 05/25/2021 | 4 | | ENTRY of Appearance by Stanley M Ward on behalf of Kylee McLaughlin (Ward, Stanley) (Entered: 05/25/2021) |
| 05/25/2021 | 5 | | AMENDED COMPLAINT against All Defendants filed by Kylee McLaughlin.(Ward, Stanley) (Entered: 05/25/2021) |
| 05/25/2021 | | | PAYMENT FOR A CIVIL CASE Filing fee $ 402, receipt number AOKWDC–3690502. (Ward, Stanley) (Entered: 05/25/2021) |
| 06/25/2021 | 6 | | ENTRY of Appearance by Michael Burrage on behalf of All Defendants (Burrage, Michael) (Entered: 06/25/2021) |
| 06/25/2021 | 7 | | ENTRY of Appearance by Austin R Vance on behalf of All Defendants (Vance, Austin) (Entered: 06/25/2021) |
| 06/25/2021 | 8 | | ENTRY of Appearance by Jordan R Dennis on behalf of All Defendants (Dennis, Jordan) (Entered: 06/25/2021) |
| 06/25/2021 | 9 | | MOTION to Dismiss by Lindsey Gray–Walton(in her official capacity), Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his official capacity), Kyle Walton(in his individual capacity). (Burrage, Michael) (Entered: 06/25/2021) |
| 06/28/2021 | 10 | | MOTION to Dismiss by Board of Regents of the University of Oklahoma, Lindsey Gray–Walton(in her official capacity), Kyle Walton(in his official capacity). (Burrage, Michael) (Entered: 06/28/2021) |
| 06/28/2021 | 11 | | ENTRY of Appearance by Heidi J Long on behalf of Board of Regents of the University of Oklahoma (Long, Heidi) (Entered: 06/28/2021) |
| 06/29/2021 | 12 | | ENTRY of Appearance by Lexie P Norwood on behalf of Board of Regents of the University of Oklahoma (Norwood, Lexie) (Entered: 06/29/2021) |
| 07/13/2021 | 13 | | ENTRY of Appearance by Alexey V Tarasov on behalf of Kylee McLaughlin (Tarasov, Alexey) (Entered: 07/13/2021) |
| 07/13/2021 | 14 | | RESPONSE to Motion re 10 MOTION to Dismiss filed by Kylee McLaughlin. (Tarasov, Alexey) (Entered: 07/13/2021) |
| 07/14/2021 | 15 | | ENTRY of Appearance by Richard C Labarthe on behalf of Kylee McLaughlin (Labarthe, Richard) (Entered: 07/14/2021) |
| 07/16/2021 | 16 | | RESPONSE to Motion re 9 MOTION to Dismiss filed by Kylee McLaughlin. (Tarasov, Alexey) (Entered: 07/16/2021) |
| 07/20/2021 | 17 | | REPLY to Response to Motion re 10 MOTION to Dismiss filed by Board of Regents of the University of Oklahoma. (Burrage, Michael) (Entered: 07/20/2021) |

| 07/20/2021 | 18 | | MOTION to Withdraw as Attorney by Board of Regents of the University of Oklahoma. (Norwood, Lexie) (Entered: 07/20/2021) |
|---|---|---|---|
| 07/21/2021 | 19 | | ORDER granting 18 motion to withdraw of Lexie P. Norwood, Esq., as counsel of record for defendant...the clerk of court is directed to strike Ms. Norwood's name as counsel of record for defendant State of Oklahoma ex rel. the Board of Regents of the University of Oklahoma. Signed by Honorable Joe Heaton on 07/21/2021. (lam) (Entered: 07/21/2021) |
| 07/23/2021 | 20 | | REPLY to Response to Motion re 9 MOTION to Dismiss filed by Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his individual capacity). (Burrage, Michael) (Entered: 07/23/2021) |
| 07/27/2021 | 21 | | NOTICE of Change of Address by Stanley M Ward (Ward, Stanley) (Entered: 07/27/2021) |
| 08/03/2021 | 22 | | MOTION to Dismiss *Pursuant to Oklahoma Citizen Participant Act* by Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his individual capacity). (Burrage, Michael) (Entered: 08/03/2021) |
| 08/21/2021 | 23 | | RESPONSE in Opposition re 22 MOTION to Dismiss *Pursuant to Oklahoma Citizen Participant Act* filed by Kylee McLaughlin. (Tarasov, Alexey) (Entered: 08/21/2021) |
| 08/30/2021 | 24 | | REPLY to Response to Motion re 22 MOTION to Dismiss *Pursuant to Oklahoma Citizen Participant Act* filed by Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his individual capacity). (Burrage, Michael) (Entered: 08/30/2021) |
| 08/31/2021 | 25 | | MOTION to Withdraw as Attorney by Board of Regents of the University of Oklahoma. (Long, Heidi) (Entered: 08/31/2021) |
| 09/02/2021 | 26 | | ORDER granting 25 the motion to withdraw of Heidi J. Long, Esq., as counsel for defendant...the clerk of court is directed to strike Ms. Long's name as counsel of record for defendant Board of Regents of the University of Oklahoma a constitutional state agency. Signed by Honorable Joe Heaton on 09/02/2021. (lam) (Entered: 09/02/2021) |
| 10/08/2021 | 27 | | ORDER the University's motion to dismiss 10 is granted and the claim against it is dismissed; the motion to dismiss of defendants Gray–Walton and Walton 9 is granted in part and denied in part: the motion is granted as to the false light and interference with prospective economic advantage claims but denied as to the First Amendment intentional infliction of emotion distress and interference with contract claims; defendants' motion to dismiss pursuant to the Citizens Participation Act 22 is denied; as some of the deficiencies noted as to the state law claims are potential subject to remediation by amendment plaintiff is granted leave to file an amended complaint within 14 days if she so chooses. Signed by the Honorable Joe Heaton. (lam) (Entered: 10/08/2021) |
| 10/27/2021 | 28 | | NOTICE OF APPEAL by Lindsey Gray–Walton(in her individual capacity), Kyle Walton(in his individual capacity). Filing fee $ 505, receipt number BOKWDC–3788501. (Dennis, Jordan) (Entered: 10/27/2021) |

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

KYLEE MCLAUGHLIN,                        )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )         NO. CIV-21-0539-HE
                                         )
THE BOARD OF REGENTS OF THE              )
UNIVERSITY OF OKLAHOMA, *et al.*,        )
                                         )
            Defendants.                  )

### <u>ORDER</u>

In this case, plaintiff Kylee McLaughlin, formerly a student at the University of

Oklahoma,[1] assert claims against the University and two of its coaches. According to the

amended complaint, plaintiff was a premier volleyball player and scholarship student

athlete who played on the University's intercollegiate women's volleyball team. She also

describes herself as a practicing Christian and conservative in her political beliefs.

Defendant Lindsey Gray-Walton is the head women's basketball coach. Defendant Kyle

Walton is Gray-Walton's husband and an assistant women's volleyball coach.

### <u>Allegations of the complaint</u>

The amended complaint broadly alleges a pattern of pressure and retaliation against

plaintiff due to her political beliefs and her reactions to claims of racism by others. She

alleges that during the period following the killing of George Floyd and of the COVID-19

---

[1] *The Amended Complaint alleges that plaintiff is "currently" a student at O.U., but also that she transferred to the University of Mississippi as a result of the events alleged in the complaint [Doc. #5, paras. 9 and 85].*

pandemic, the focus of the coaches of the O.U. volleyball team shifted from volleyball to required discussions about "white privilege and social justice," including watching documentaries about racism and slavery. The complaint alleges that, although her mandated comments about a required documentary were not racist, another team member suggested via a social media post that plaintiff's comments were those of a racist. The complaint alleges that, on June 12, 2020, plaintiff posted emojis (a laughing clown and a skull and crossbones) on an ESPN website to indicate her skepticism as to whether "The Eyes of Texas," a song of some popularity in the State of Texas, was a racist song. According to the complaint, the posting triggered an immediate contact from Gray-Walton that same day, adverse comments from some of her teammates, and, on the following day, instructions from Gray-Walton for plaintiff to take down her posts and an extended discussion about "white allergies and white privilege" and plaintiff's need to look into herself to identify those things.

The complaint further alleges that, a day or so after the ESPN posting, Gray-Walton and Kyle Walton, along with others, conducted a team meeting directed at plaintiff's comments about the documentary and "The Eyes of Texas." The meeting allegedly included a representative of "the Psychological Research Organization" and O.U.'s Office of "Diversity, Equity and Inclusion." According to the complaint, plaintiff was called a racist and a homophobe during the meeting (apparently by other teammates). Allegedly, defendant Gray-Walton said something to the effect that "we can't save you when you get into the real world" and defendant Kyle Walton said, "Not sure I can coach you anymore." The complaint alleges plaintiff attempted to apologize but the group rejected the apology

2

because they viewed it as offered with insufficient feeling.  Allegedly, due to pressure from Gray-Walton, plaintiff apologized to the coaches and players at the University of Texas the next day by phone and they were more accepting.

The complaint indicates the incident(s) and the accusations that plaintiff was a racist and a homophobe resulted in more meetings, eventually resulting in a zoom meeting (apparently with Gray-Walton and Toby Baldwin, identified as "O.U.'s compliance officer") in which plaintiff was told she "did not fit the culture of the program" and could not be trusted based on her media posts and comments reported by her teammates.  She was allegedly presented with an "ultimatum" as to her senior season and required to pick between three options: (1) keep her scholarship, redshirt, practice only with her coach but not the team, and undergo more diversity, equity, and inclusion training, (2) keep her scholarship but only as a student (apparently meaning off the team), or (3) transfer to some other school.

The complaint alleges plaintiff initially elected the first option but also attempted to transfer later.  She indicates she, although a senior, was required to participate in the freshman athletic orientation over two days.  She alleges she was later required to be in an individual "Growth Plan," involving training about "homosexuality, unlearning 'classism', 'ableism', 'trans and homosexual negativities', and 'sexism.'"

The complaint also outlines other alleged instances of unfair treatment.  The complaint generally alleges defendants' actions were the result of their strongly held political or social justice beliefs, including support for critical race theory, opposition to President Trump, and a belief that white persons like plaintiff are privileged and racist.

3

She alleges the unfair branding of her as a racist and a homophobe caused her substantial distress and injury, including damage to her reputation and future prospects.  The complaint alleges she was ultimately forced to transfer to another school because of the defendants' actions.

Based on these allegations, plaintiff asserts five claims in her complaint.  She asserts a First Amendment retaliation claim against Gray-Walton and Kyle Walton in their individual capacities.  She asserts state law claims against Gray-Walton and Walton for false light invasion of privacy, intentional infliction of emotional distress, and interference with contract and/or prospective economic advantage.  Finally, she asserts a state law claim, based on 70 Okla. Stat. § 2120, against the University and the other defendants in their official capacities.

### Discussion

Defendants have moved to dismiss the claims against them on various grounds.  Three motions are involved.

### a. University of Oklahoma motion

The only claim asserted against the University is one for violation of 70 Okla. Stat. § 2120, a relatively recent statute which creates protections for expressive activity of students and others on the campuses of Oklahoma institutions of higher education and certain others.  The University has moved to dismiss on the basis of lack of subject matter jurisdiction and failure to state a claim.[2]

_____

[2] _The motion is also asserted on behalf of the other defendants to the extent they are sued in their official capacities.  Official capacity claims are, in substance, claims against_

4

The challenge to subject matter jurisdiction is based on the State's immunity from suit in federal court based on the Eleventh Amendment. The University asserts, and plaintiff does not dispute, that it, as an arm of the state, is immune from suit in federal court unless Congress has abrogated that immunity or the State itself has waived it. *See* Kentucky v. Graham, 473 U.S. 159 (1985). There is no suggestion here that Congress has abrogated the State's immunity as to a claim like that involved here, so the question is whether Oklahoma has waived its immunity.

A state may waive its immunity by voluntarily invoking federal jurisdiction or by some other clear expression of intent to do so. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Here, the University has not invoked federal jurisdiction by filing the suit here or removing it to this court. So, the question becomes whether the State has otherwise consented to suit in federal court.

Plaintiff says the State has consented based on the language and nature of § 2120 itself.[3] The court concludes otherwise. There is nothing in the language of that section which mentions federal court or federal jurisdiction. The statute's reference to protecting First Amendment rights is not enough, in and of itself, to constitute the clear declaration necessary to a waiver of immunity. College Sav. Band. v. Florida Prepaid Postsecondary

---

*the University and subject to the same considerations as to Eleventh Amendment immunity.* *Barrett v. Univ. of New Mexico Bd. of Regents,* 562 Fed. Appx. 692, 694 (10th Cir. 2014).

[3] *Plaintiff mentions the Oklahoma Governmental Tort Claims Act and indicates a notice of tort claim was given pursuant to the Act. But, at least as far as Eleventh Amendment immunity is concerned, there is nothing in the Act to suggest a waiver of that immunity. Indeed, it states the contrary. 51 Okla. Stat. § 152.1(B).*

5

Educ. Expense Bd., 527 U.S. 666, 676 (1999).  State courts have concurrent jurisdiction to enforce federal constitutional rights, hence such a reference does not necessarily imply anything about enforcement in federal court.

If there was any doubt about that conclusion, plaintiff's argument as to the legislative history of § 2120 would end it — but not in the way plaintiff appears to assume.  According to plaintiff, the bill initially introduced in the legislature included a provision waiving immunity to suit in federal court.  But, according to plaintiff, the bill's author then offered an amendment to remove the waiver language from the bill during consideration of it and the bill passed without it.  Assuming the accuracy of that description, it clearly indicates the legislature did not intend to waive sovereign immunity.

In any event, the court concludes plaintiff has not shown a basis for avoiding Oklahoma's Eleventh Amendment immunity as to this suit.  The court therefore lacks subject matter jurisdiction over the claim against the University.  In light of that conclusion, it is unnecessary to address the University's alternate ground for dismissal and determine whether the complaint states a plausible claim under the statute or whether it is only, as the University suggests, some sort of "inimical rant."  The University's motion will be granted.

**b.  Motion of Lindsey Gray-Walton and Kyle Walton individually**

The individual defendants have moved to dismiss the claims against them.  They assert the defense of qualified immunity as to the First Amendment claim and assert, as to all claims, that the complaint fails to state plausible claims against them.

When qualified immunity is asserted in a Rule 12(b)(6) motion, the plaintiff must establish "that the defendant violated clearly established law.  Thus, the plaintiff must

6

identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." Lybrook v. Members of Farmington Mun. Schools Bd. of Educ., 232 F.3d 1334, 1337 (10th Cir. 2000) (quotations and citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court accepts all well-pleaded factual allegations of the complaint as true and views them in the light most favorable to the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*First Amendment claim*.    In order to make out a § 1983 claim, a plaintiff must establish that the defendant, acting "under color of state law," deprived the plaintiff of a right guaranteed by the Constitution or federal law. Here, Gray-Walton and Walton are alleged to be state employees acting as such, hence the "color of state law" requirement is satisfied. Where the right at issue is the First Amendment right of free speech, a plaintiff must establish (1) that he/she engaged in constitutionally protected speech, (2) that plaintiff was subjected to some adverse action sufficiently severe as to "chill a person of ordinary firmness" from engaging in the speech, and (3) that the response was substantially motivated by the reaction to the protected speech. McBeth v. Hines, 598 F.3d 708, 717 (10th Cir. 2010).

7

Whether particular speech qualifies as protected speech depends on the circumstances. As a general proposition, it is clear that students have First Amendment rights — they do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." <u>Tinker v. Des Moines Indep. Cmty. Sch. Dist.</u>, 393 U.S. 503, 507 (1969). However, the constitutional rights of students in an educational setting are not coextensive with the rights of adults in other settings. <u>Bethel Sch. Dist. v. Fraser</u>, 478 U.S. 675, 682 (1986). Speech that is disruptive or obscene may be restricted. <u>Tinker</u>, 393 U.S. at 508-09. School officials may impose reasonable restrictions on school-sponsored speech so long as the restrictions relate to legitimate pedagogical concerns. <u>Hazelwood Sch. Dist. v. Kuhlmeier</u>, 484 U.S. 260 (1988). The <u>Hazelwood</u> standard is applicable in a university setting as to speech that occurs in a classroom as a part of class curriculum. <u>Axson-Flynn v. Johnson</u>, 356 Fed.3d 1277, 1289 (10th Cir. 2004). The speech restrictions need not be viewpoint neutral so long as they have a legitimate educational purpose. <u>Pompeo v. Bd. of Regents of the Univ. of New Mexico</u>, 852 F.3d 973, 982-3 (10th Cir. 2017) (citing cases).

As to student speech that is off-campus or outside a classroom or classroom-type setting, the school's ability to limit speech is more limited. <u>Mahanoy Area Sch. Dist. v. B.L.</u>, 141 S.Ct. 2038 (2021). That is because, among other things, the school will generally not be acting *in loco parentis*, regulating off-campus speech would be essentially a regulation of all speech, and there is a substantial public interest in protecting a student's right to express unpopular opinions. *Id.* at 2046. Presumably that latter interest is even more substantial in a university context than in a high school such as <u>Mahanoy</u> involved.

8

Applying these standards to the allegations of the complaint, the court concludes the complaint alleges plaintiff's participation in constitutionally protected speech. If a student's posting, via social media, of a direct and vulgar attack on her school and its coaches is protected speech (i.e., <u>Mahanoy</u>), it is difficult to see how posting a somewhat ambiguous emoji on a third-party website, apparently expressing skepticism that "The Eyes of Texas" is a racist song, could be otherwise. Further, plaintiff's alleged on-campus statements of her political views, although in the context of a school-sponsored activity, were also protected. There is nothing in the complaint to suggest that plaintiff presented her opinions in a disruptive manner or that they were vulgar or indecent.[4] Further, it is less than obvious that the coach of the volleyball team has a legitimate pedagogical interest in policing the political opinions of the team's members. One of the cases cited by defendants makes the point — <u>Lowery v. Euverard</u>, 497 F.3d 584 (6th Cir 2008).

<u>Lowery</u> involved members of the high school football team who had become dissatisfied with their coach. They circulated a petition calling for his removal. One of them signed a statement that "I hate Coach Euvard [sic] and I don't want to play for him." They ended up being kicked off the team and urged other team members to leave with them. The <u>Lowery</u> court essentially concluded, unsurprisingly, that the school had a legitimate interest in limiting speech that was a direct challenge to the coach's authority and which caused disunity on the team. There is no such circumstance alleged in this case.

---

[4] *Defendants' responses suggest plaintiff said other things that were objectionable beyond those described in the complaint. That may well be, but the inquiry for present purposes is limited to the allegations of the complaint.*

9

The <u>Lowery</u> case included this statement which is, however, instructive here in light of plaintiff's allegations:

> Of course, players do not completely waive their rights when they join a team; a coach could not dismiss a player simply because the player had religious or political views that were unpopular with his teammates. Nothing of the sort happened in the instant case.

<u>Id.</u> at 600. But that is essentially what plaintiff alleges happened here. <u>Lowery</u> thus supports the conclusion that plaintiff has alleged she engaged in speech which is protected by the First Amendment. In any event, the court concludes the first element of a First Amendment claim is satisfied.

With respect to the second element, the court concludes the complaint alleges facts sufficient to satisfy this element as well. It alleges that defendant Gray-Walton ordered her to take down the post about the "Eyes of Texas," pressured her to apologize to UT personnel, initiated team meetings focused on plaintiff's opinions as expressed about the required film viewing, involved the University's diversity and inclusion office in the discussion (which apparently resulted in remedial attitude-adjustment sessions for plaintiff but not others), restricted plaintiff's opportunity to practice with the team, ignored inquiries from plaintiff and her parents, and ultimately forced her to leave the program. The allegations as to Gray-Walton easily meet the "chill" standard.

The question is closer as to defendant Kyle Walton, who appears to have had less involvement in the various challenged actions. However, his alleged comment to plaintiff during a team meeting — "Not sure I can coach you anymore" — is subject to multiple interpretations. In the context of a motion to dismiss, the court views the alleged facts in

10

the light most favorable to the non-moving party and the referenced comment could be viewed as suggesting an intent to remove plaintiff from the team. So viewed, it states the necessary threat of adverse action.[5]

The amended complaint also supports the conclusion that defendants' various adverse or remedial actions as to plaintiff were the result of their disagreement with her expressed political views. It alleges strongly held political views, particularly on the part of Gray-Walton, which were at odds with plaintiff's and which allegedly motivated defendants' actions.

In short, the complaint sufficiently alleges a violation by these defendants of plaintiff's constitutional right to free speech.

_Qualified immunity._ The harder question is whether the claims against Gray-Walton and Walton should be dismissed based on their invocation of the defense of qualified immunity.[6] As noted above, when the qualified immunity defense is asserted, a plaintiff must show not only that her constitutional rights have been violated but that the pertinent constitutional right was "clearly established" so as to put a defendant on notice that his or

---

[5] _Defendants suggest that plaintiff did not have a constitutional right to participate in an extra-curricular activity like being on the volleyball team. However, that fact is not determinative in the First Amendment retaliation context. See Agency for Int'l. Development v. Alliance for Open Society Int'l. Inc., 133 S.Ct. 2321, 2328 (2013)._

[6] _Defendants reference several cases where coaches successfully raised the qualified immunity defense but most of them do not involve First Amendment claims. See defendants' response [Doc. #9] at note 3: Mann v. Palmerton Area Sch. Dist., 872 F.3d 165 (3rd Cir. 2017) and Davis v. Carter, 555 F.3d 979 (11th Cir. 2009) involved substantive due process claims. Kipps v. Collier, 197 F.3d 765 (5th Cir. 1999) involved a due process claim for interference with the right of familial association._

11

her conduct was proscribed. Ordinarily, "clearly established" means that there must be a prior Supreme Court or Tenth Circuit case on point, or that the clear weight of authority elsewhere points only in a single direction. Medina v. City & Cty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

In making the determination of whether the pertinent right was clearly established, the court may not "define clearly established law at a high level of generality." City of Escondido v. Emmons, 139 S.Ct. 500, 503 (2019). But the exercise is also not a "scavenger hunt" for prior cases with precisely the same facts. Bond v. City of Tahlequah, 981 F.3d. 808, 824 (10th Cir. 2020). Sometimes conduct will plainly contravene constitutional standards even though the precise circumstances have not arisen before. Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006). Less specificity is required as the conduct becomes more egregious in light of prevailing constitutional principles. Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007). Ultimately, the question is whether the state of the law at the time provided a defendant with "fair warning" that their alleged conduct was unconstitutional. Tolan v. Cotton, 572 U.S. 650, 656 (2014).

Here, the qualified immunity issue arises at the motion to dismiss stage and, as noted above, the factual allegations of the complaint are viewed in the light most favorable to plaintiff. The court draws all reasonable inferences from them in plaintiff's favor. Viewed in that light, she has alleged that substantial penalties were imposed on her simply for expressing, in a non-disruptive way, political opinions that the coaches and/or other team members disagreed with. The court concludes it was clearly established that such conduct would run afoul of constitutional prohibitions.

12

With respect to the off campus conduct on which plaintiff relies (i.e., the ESPN posting), the most instructive case is Seamons v. Snow, 206 F.3d 1021 (10th Cir. 2000). Seamons involved a high school football player who was kicked off the team for reporting to the authorities an assault on him by teammates in the locker room and refusing to apologize for the reporting. The Circuit reversed the district court's grant of qualified immunity to the coach. In finding that the pertinent law was clearly established, the court, referring to its earlier opinion in the same case, said "...extensive case law in 1993 supported the proposition that school authorities may not penalize students when that speech is non-disruptive, non-obscene, and not school-sponsored." 206 F.3d at 1030 (citing Tinker at 508-09). Here, the complaint alleges nothing that could plausibly be viewed as disruptive, obscene, or otherwise objectionable.

With respect to the on-campus speech alleged by plaintiff (her comments after viewing the film, etc.), the court concludes the clearly established law precluded what the complaint alleges the defendants did — punishing plaintiff purely for her expression of political opinions they or others disagreed with. The complaint does not allege speech by plaintiff that was disruptive, lewd, or obscene. There is no suggestion that plaintiff's statements were inartfully expressed, poorly researched, or not thought through. It does not allege a basis for concluding her statements were "inflammatory or divisive." *See* Fleming v. Jefferson Cty. Sch. Dist. R-1, 298 F.3d 918, 926 (10th Cir. 2002). And while a team member's views on political issues strikes the court as being at the outer edges of, or beyond, anything that might constitute a "legitimate pedagogical concern" for a volleyball coach, the court acknowledges that even non-academic activities loosely related

13

to learning may be enough of a pedagogical connection.  *See* <u>Pompeo</u>, 852 F.3d at 987-8.

However, the salient point here is that plaintiff's political speech was purely and only that

— political opinions and the like unaccompanied by any other aggravating factor.[7]  As

such, there is nothing in the alleged circumstances to take this case outside the long-

established principle that a state actor cannot retaliate against someone just because they

disagree with them.[8]  As the Supreme Court stated in <u>Texas v. Johnson</u>, 491 U.S. 397, 414

(1989):  "If there is a bedrock principle underlying the First Amendment, it is that

government may not prohibit the expression of an idea simply because society finds the

idea itself offensive or disagreeable."  The same sentiment was stated more eloquently in

<u>West Virginia St. Bd. of Educ. v. Barnette</u>, 319 U.S. 624, 642 (1943):

> If there is any fixed star in our constitutional constellation, it is that no official, high
> or petty, can prescribe what shall be orthodox in politics, nationalism, religion or
> other matters of opinion or forced citizens to confess by word or action their faith
> therein.

Based on the allegations of the complaint, there is nothing in the circumstances here to take

this case outside the scope of that fundamental principle.  The principle was sufficiently

established and obvious that a university professor or coach should have known of it.

---

[7] *As noted above, defendants say there is more to the story than what is set out in the complaint and that may be true.  But the present inquiry is based on the face of the complaint.*

[8] *That statement is also consistent with the Supreme Court's recognition in* <u>*Mahanoy*</u>*, 141 S.Ct. at 2046, that schools have a strong interest in future generations understanding "the workings of the well-known aphorism, 'I disapprove of what you say, but I will defend to the death your right to say it.'"* <u>*Mahanoy*</u> *was decided after the conduct at issue here, and hence has no direct application to the "clearly established" analysis directed at conduct in 2020, but the principle has long been recognized.*

14

The court concludes defendants are not entitled to dismissal based on qualified immunity and that the complaint otherwise states a First Amendment retaliation claim against them.

*False light invasion of privacy – state law.*

In Oklahoma, when a defendant has given publicity to a matter which places the plaintiff before the public in a false light, they will be liable for false light invasion of privacy if:

(a) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Colbert v. World Pub. Co., 747 P.2d 286, 290 (Okla. 1987).[9]  A key component of a false light claim is making a matter public which places the plaintiff in a false light.

Plaintiff alleges that defendants made wrongful and false statements about plaintiff's responses to questions about slavery and African American incarceration rates as well as about plaintiff's social media posting which amounted to accusations that she was a racist and homophobe.[10]   While that may be sufficient to address other aspects of the tort, it does not allege a basis for concluding that defendants portrayed plaintiff in a false light to the public.  "Publicity" for purposes of Oklahoma's false light claim requires that the matter be communicated to the public at large or to enough persons that the matter

---

[9] *Colbert* acknowledges that Oklahoma's false light claim arose from the adoption of the invasion of privacy claim from the Restatement (Second) of Torts § 652A(2)(d).

[10] *The only direct allegation(s) of plaintiff being a racist appears to be attributed to her teammate(s), not to defendants.*

15

should be regarded as substantially certain to become public knowledge.  *See* Hadnot v. Shaw, 826 P.2d 978, 985 n.31 (Okla. 1992); Restatement (Second) Torts § 652E.  Here, plaintiff alleges only that the defendants' comments were limited to team meetings or other small meetings with university personnel.   Defendants' motion will therefore be granted as to the false light claim.

### *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege an intentional or reckless act that was extreme and outrageous and which caused plaintiff severe emotional distress.  Durham v. McDonald's Rest. of Okla., Inc., 256 P.3d 64, 66 (Okla. 2011).  Here, plaintiff alleges that defendants intentionally and recklessly labeled her as, or portrayed her as, a racist and homophobe.  The court concludes the alleged conduct is sufficiently serious, in light of the relationship of the parties, the current societal and political climate, and the fact it occurred in a university setting, to qualify as extreme and outrageous.[11]   The complaint also alleges that plaintiff suffered severe emotional distress, sleeplessness, anxiety, embarrassment, injury to her reputation, and humiliation, as a result.  At the motion to dismiss stage, plaintiff has sufficiently alleged an intentional infliction of emotional distress claim.

Defendant's motion will be denied as to the IIED claim.

---

[11] *Defendants argue it is absurd to equate being labeled a racist and a homophobe with being called "the n-word."  It is not clear to the court that plaintiff, by citing to a law review article, has suggested that equivalency but, in any event, the question is not whether being called those things is as bad as someone using the n-word, but rather whether the particular accusations or labeling alleged to have occurred qualify as extreme and outrageous under the circumstances.  The court concludes they do.*

16

*Intentional Interference with Contractual Relationship and Economic Advantage*

To state a claim for intentional interference with a contractual relationship, a plaintiff must plausibly allege malicious or wrongful interference with a contractual right that is neither justified, privileged, or excusable and which results in damage to the plaintiff.  Loven v. Church Mut. Ins. Co., 452 P.3d 418, 424 (Okla. 2019).  To state a claim for intentional interference with a prospective economic advantage, a plaintiff must allege that the defendant had knowledge of a valid business relationship (or an expected business relationship) and intentionally interfered with that relationship with a desire to induce or cause a breach or termination of the relationship or expectancy which results in damage to the plaintiff.  *Id.*

Defendants do not challenge that plaintiff's relationship with OU was at least partly contractual in nature.  Rather, they suggest she did not have a property interest in being there and therefore no claim exists.  The court is unpersuaded.  The question for present purposes is not whether plaintiff had a property interest in attending OU or playing volleyball, such as might be pertinent in evaluating a Due Process claim.  Rather, the claim is for interference with a contract, and the complaint sufficiently alleges interference with it.  To the extent the argument focuses on plaintiff's scholarship, the complaint does not allege that her scholarship was revoked directly but it does allege that she was forced to leave the university as a result of the defendants' conduct, with a consequent impact on the scholarship.

Defendants also argue they could not have interfered with plaintiff's contract because they were agents of the state, the contracting party, and a party or its agent cannot

17

interfere with its own contract.   While it is true that a party to a contract cannot ordinarily interfere with its own contract, so as to make out the tort of wrongful interference, an employee or agent of the contracting party <u>may</u> be liable for the tort if it is established that the agent acted maliciously or for his/her own purposes, in such a way as to take their actions outside the scope of their employment.  *See* <u>Martin v. Johnson</u>, 975 P.2d 889 (Okla. 1998).   Here, the complaint alleges defendants' actions were motivated by their intense personal political views and outlook, rather than being simply concerned with advancing their employer's interests.   That is sufficient for present purposes to state a claim for interference with contract.

The court concludes otherwise as to any claim for interference with prospective economic advantage.   The mere possibility of a professional career, without more, is insufficient to take the circumstances out of the realm of speculation.

Accordingly, defendants' motion will be denied as to the interference with contract claim but granted as to prospective economic advantage claim.

**c.   <u>Motion of Lindsey Gray-Walton and Kyle Walton Pursuant to the Oklahoma Citizens Participation Act</u>**

Defendant's motion to dismiss pursuant to the Oklahoma Citizens Participation Act will be denied.   The purpose of that Act "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  12 Okla. Stat. § 1430(B).  Defendants would have the court employ that Act to dismiss the state law claims

18

of plaintiff arising out of defendants' alleged actions which allegedly violated plaintiff's constitutional right to speak freely. Perhaps that somewhat perverse result can be reached through extended legal gymnastics of some sort, but the court declines to undertake the exercise. The court has considerable doubt whether the Act and its prescribed means for handling and evaluating claims is anything other than a claims processing rule which cannot bind a federal court even as to state law claims. But even if it does apply here, it is difficult to see how, in the context of this case and the court's determination that plaintiff states a claim for violation of her First Amendment rights, plaintiff should be precluded from pursuing state law claims based on the same facts. There may be cases in federal court where state law claims should be dismissed based on the Oklahoma Citizen Participation Act. This is not one of them.

## Conclusion

The University's motion to dismiss [Doc. #10] is **GRANTED** and the claim against it is dismissed. The motion to dismiss of defendants Gray-Walton and Walton [Doc. #9] is **GRANTED IN PART** and **DENIED IN PART**: the motion is granted as to the false light and interference with prospective economic advantage claims, but denied as to the First Amendment, intentional infliction of emotion distress, and interference with contract claims. Defendants' Motion to Dismiss pursuant to the Citizens Participation Act [Doc. #22] is **DENIED**. As some of the deficiencies noted as to the state law claims are potentially subject to remediation by amendment, plaintiff is granted leave to file an amended complaint within 14 days if she so chooses.

**IT IS SO ORDERED**.

Dated this 8th day of October, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KYLEE MCLAUGHLIN,     )
           )
       Plaintiff, )
           )
v.            )
           ) Case No.  CIV-21-0539-HE

THE BOARD OF REGENTS OF THE  )
UNIVERSITY OF OKLAHOMA, a   )
constitutional state agency, LINDSEY GRAY- )
WALTON, in her official and individual  )
capacities, and KYLE WALTON, in his official )
and individual capacities,     )
           )
       Defendants. )

---

## NOTICE OF APPEAL

Defendants Lindsay Gray-Walton and Kyle Walton ("Waltons"), pursuant to Federal Rules of Appellate Procedure 4, hereby appeals to the United States Court of Appeals for the Tenth Circuit the Order dated October 8, 2021 [Doc. 27] denying Waltons' Motion to Dismiss [Doc. 9]. An appeal of this ruling is timely and proper pursuant to 28 U.S.C. § 1291.

Respectfully submitted,

*s/ J. Renley Dennis*
Michael Burrage, OBA No. 1350
J. Renley Dennis, OBA No. 33160
Austin R. Vance, OBA No. 33294
WHITTEN BURRAGE
512 N. Broadway Ave., Ste 300
Oklahoma City, OK  73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
Email: mburrage@whittenburragelaw.com
        jdennis@whittenburragelaw.com
        avance@whittenburragelaw.com

*Attorneys for Defendants, Lindsey-Gray Walton
and Kyle Walton*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2021, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/ J. Renley Dennis*

2

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                                    Jane K. Castro
Clerk of Court                                                                       Chief Deputy Clerk

October 28, 2021

Mr. Michael Burrage
Mr. Jordan R. Dennis
Mr. Austin R. Vance
Whitten Burrage
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102

**RE:**      **21-6142, McLaughlin v. Walton, et al**
             Dist/Ag docket: 5:21-CV-00539-HE

Dear Counsel:

Your appeal has been docketed, and the appeal number is above. **Within 14 days** from
the date of this letter, Appellants' counsel must electronically file:

- **An entry of appearance** per 10th Cir. R. 46.1(A).
- **A docketing statement** per 10th Cir. R. 3.4.
- **A transcript order form or notice that no transcript is necessary** per 10th Cir.
  R. 10.2. This form must be filed in **both** the district court and this court.

**Also within 14 days**, Appellee's counsel must electronically file an entry of appearance.

The Federal Rules of Appellate Procedure, the Tenth Circuit Rules, and forms for the
aforementioned filings are on the court's website. The Clerk's Office has also created a
set of quick reference guides and checklists that highlight procedural requirements for
appeals filed in this court.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     Richard Labarthe
        Alexey Tarasov
        Stanley M. Ward

CMW/djd